FILED

SEP 16 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| STANLEY MASON,<br>PLAINTIFF<br><br>vs.<br><br>THE CITY OF WACO, TEXAS AND<br>RYAN HOLT, FORMER ACTING<br>CHIEF AND FORMER CHIEF OF THE<br>CITY OF WACO POLICE<br>DEPARTMENT,<br>DEFENDANTS | § § § § § § § § § § § § § | W20CA844<br><br>CIVIL CAUSE NUMBER _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

Stanley Mason, Plaintiff, brings this action against the City of Waco, Texas, a political subdivision of the State of Texas and against Ryan Holt, former Acting Chief and former Chief of the Waco Police Department, who is sued in his individual capacity.

### I.   Introduction

1. Stanley "Stan" Mason is a former Waco Police Officer, who was honorably discharged from the Air Force as a decorated non-commissioned officer.

2. He received his Peace Officer License on April 7, 1994, becoming a member of the Waco Police Department, having received his commission on March 31, 1994.

3. Officer Mason had an exemplary record in his 25 year career as a Waco Police Officer, and played an integral role in the establishment of Waco's community policing initiatives. In fact, he was well known in the areas he patrolled as a result of fostering relationships in the communities he worked.

4. Around July 7, 2016, Officer Mason began doing Facebook videos, which later evolved

into a popular blog entitled "Behind the Blue Curtain" starting on May 13, 2017. The success of the blog and Mason's exercise of his free speech rights brought him unwarranted attention within the Waco Police Department. Mason is an African American man.

5. His broadcasts never focused on Waco's Police Department but, rather, on generalized areas of public interest regarding both the positives and the negatives of policing, a subject of intense public interest in this day and time. All broadcasts were done out of uniform, on his own time and at his own expense.

6. During the time of Mason's Facebook videos he received a formal complaint from a fellow officer accusing him of disparaging the department. Said complaint was ruled "unfounded". He was the subject of a memo written by a fellow officer to supervisors accusing him of being in uniform during the broadcast which was clearly erroneous. Even the Police Chief at the time, Ryan Holt, solicited access to Mason's Facebook page. Proof of this occurrence is contained in Exhibit "A", attached to this petition and incorporated by reference herein as though fully set out at length.

7. In addition, Plaintiff's life was threatened by a mental health consumer in crisis on September 16, 2018, and fellow officers failed to immediately, or even timely, disclose this information to Officer Mason; or to route said information through the chain of command for the safety and protection of Mason.

8. Even then, on October 28, 2018, Plaintiff was not promptly provided backup on a domestic violence call. Departmental policy dictates that a responding officer await backup in such a circumstance.

9. Officer Mason resigned his position on February 28, 2019, as a result of feeling

threatened by his treatment in the department and his grave concerns regarding his personal safety.

10. This is a civil action for monetary relief for injuries and damages Plaintiff sustained as a result of the acts and omissions of the Waco Police Department. Defendants were responsible for damaging Plaintiff's career and for violations of the 1st, 5th and 14th Amendments of the United States Constitution, and Sections 3, 3a., 4, 8,19, 27 and 29 of the Bill of Rights of the Constitution of the State of Texas. The harms visited upon Plaintiff are the direct result of official policies, or failure to enforce official policies on his behalf, of the City of Waco Police Department. The policies of the department and failures by the City and Police Department to implement and enforce said policies and standards that ensure Waco Police Officers know and are trained in the constitutional rights of their fellow officers, and are protected by one another.

## II.   Parties

11. Plaintiff, Stanley Mason, is an individual who, at all times pertinent to this litigation, resided in Waco, Texas. He now lives in the State of Georgia.

12. Defendant, City of Waco, is a political subdivision of the State of Texas.

13. Defendant, Ryan Holt, is a former Acting Chief and former Chief of Police of the Waco Police Department.

## III.   Jurisdiction

14. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

15. Federal jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C.§ 1983.

16. The Court has general personal jurisdiction over Defendants City of Waco and Ryan

Holt by virtue of their citizenship and residence in McLennan County, Texas, as well as their systematic contacts with the State of Texas. Defendant City of Waco is a municipality incorporated in the State of Texas.

17. Furthermore, the Court has specific personal jurisdiction over Defendants, the City of Waco and its Police Department because Plaintiff's claims arise out of or related to a contact between them and the State of Texas.

### IV. Venue

18. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

Venue is proper in the Western District of Texas - Waco Division and is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1367, as the incidents that give rise to this Complaint occurred in Waco, Texas, within the Western District of Texas, and all Defendants reside within this district.

### V. Conditions Precedent

19. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

20. All conditions precedent have occurred or have been performed. Fed. R. Civ. P. 9(c).

### VI. Statement of Facts

21. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

22. When Plaintiff graduated the academy and became a police officer he attained a goal he had sought and desired for quite some time. He was eager, excited, well trained and felt well suited to be a servant of the people. Owing to his outgoing and friendly disposition, and good

and generous heart, he embarked on his mission to "protest and serve" the citizens of Waco, Texas.

23. Plaintiff discharged his duties with a solemn dedication to task, always mindful of the natural rights, and the statutory and constitutional rights of those with whom duty caused him to interact. When he was off duty, he devoted much time and energy with fellow citizens. He mentored the young, gave wise counsel to his peers and cared deeply for the elderly.

24. Ironically, engaging in volunteer work as a panelist at Toliver Chapel Baptist Church set in motion an unforeseen opportunity to serve. The panel discussion was primarily for young people, regarding their interaction with police. The rights of accused were discussed, and the do's and dont's of interactions with police were expounded upon. The attendance at the event was considered good and the topics were worthy of discussion. There were some city leaders in attendance, including members of the police force. The topics were general in nature, and not focused on the Waco Police Department. Acting Chief Gentsch and Councilman Wilber Austin were in attendance, and Gentsch was a panelist.

25. One or more members of the audience videotaped the event and posted it on social media. Plaintiff was inspired to teach and interact with more souls through social media. A seed had been planted.

26. On or about July 7, 2016, Plaintiff began a Facebook Live video broadcast. At the time Plaintiff started said broadcast, he had served as an officer with the Waco Police Department for over 22 years. Plaintiff served with distinction over his years of service.

27. Plaintiff posted the video of the Toliver Chapel meeting on his Facebook social media page shortly after the event.

28. On July 29, 2016, Plaintiff was made aware that a Personnel Complaint had been made

against him for an unprofessional social media post, or a post inclined to discredit or reflect unfavorably on the Waco Police Department.

29. An investigation was conducted and its findings included that the videos not only did not bring dishonor on the police department but, to the contrary, Plaintiff's message was to strengthen ties between the community and the police department. It was noted that Plaintiff takes pride in his work, takes accountability for his actions on and off duty, and is a leader in the community. The investigator made mention of having viewed other videos made by Plaintiff in addition to those previously referenced, and they did not discredit or reflect unfavorably on the police department. The complaint was ruled "Unfounded" which, in legal parlance and under General Orders definition means: It did not occur.

30. Any department attempt to muzzle or stifle free speech, particularly on issues of public interest, is violative of the first amendment of the United States Constitution. It is a control mechanism and adverse to what Americans cherish: freedom.

31. On or about July 20, 2016, Plaintiff was advised that several officers had voiced concerns regarding his videos.

32. Plaintiff was troubled by the strict scrutiny of his off duty activities and social media presence. He began to suspect that there were efforts by departmental employees to "hack" his Facebook social media page.

33. Plaintiff's concerns were heightened to the level which caused him to file a Public Information Request form requesting "documents regarding any internal affairs investigations or so-called "inquiries", regarding his social medical posts and videos.

34. Plaintiff was becoming an outcast in the department for which he labored for well over

two decades. He had become the subject of scorn, resentment and undeserved scrutiny having nothing to do with the performance of his duties, but having everything to do with how he spent his private time. He was not allowed to separate his private life from his sworn duties, because his private life and activities were invaded by unwarranted intrusions by members of the department.

35. In a place that should have been a sanctuary and a comfort zone; a place one would think would be a bastion of order and peace, the Waco Police Department, had become to Plaintiff a place of dread and misery. Plaintiff experienced anxiety and fear of what might next occur.

36. Plaintiff's Facebook media page grew in such popularity that it morphed into a popular radio blog named "Behind the Blue Curtain." While broadcasting and discussing the important issues of our time, Plaintiff found a rewarding diversion. On the show, and in preparation for it, Plaintiff found some peace. Yet, his yearning and calling was for good community policing. Plaintiff was deprived of his passion.

37. The blog began on May 13, 2017. The show has co-hosts and entertains all kinds of callers; from the mighty to the meek. It is a safe place to vent and seek sound counsel regarding issues that have a piercing effect on the lives of forgotten people, particularly poor and minority communities. With all the success the show has achieved, it has been Plaintiff's Achilles' heel; for it has ushered in condemnation of Plaintiff's free expression and suppressed rights guaranteed to him by the First Amendment and Fourth Amendment of the U.S. Constitution. It has denigrated rights guaranteed to Plaintiff by the Texas Constitutions Bill of Rights: Section 3 (equal rights); Section 4 (equality under the law); Section 8 (freedom of speech) and sections 19 and 27 (due course of law and peaceable assembly).

38. "Behind the Blue Curtain" has hosted Judge Joe Brown, Dr. Joel Fitzgerald, Sr., former

Chief of Police of Fort Worth, Reverend Peter Johnson, a prominent civil rights leader. The show has entertained a leader of the Proud Boys, a group many would not entertain, which is probably classified as a hate group. Retired 32 year Chicago Homicide Detective, and Adjunct Professor, Joseph J. Mosley, is a co-host. He is the brother of Carol Mosley Braun, a former United States Senator for Illinois.

39. On September 16th or 17th of 2018, Plaintiff responded to a call on a mental health consumer in crisis. Plaintiff worked the midnight shift. The description describes a troubled soul with issues of the mind. Plaintiff handcuffed Mr. Tony Bridgewater because he was in possession of a knife. Officer Brandon Garrett arrived as backup and he and Plaintiff awaited the arrival of AMR; the emergency medical transport and providers. Plaintiff returned to normal service at 11:46 p.m.

40. The next day Plaintiff received a startling Facebook message from one of the emergency medical technicians: his life had been threatened by Mr. Bridgewater. The Facebook message was from Bawnie Sutton, the above referenced technician, is attached hereto as Exhibit "B", and incorporated herein as though fully set out at length.

41. The threat was not told to Plaintiff by his backup, Officer Garrett. The peril of such a threat can be imminent and lethal. Mr. Bridgewater was released from the hospital. The effect on Plaintiff's peace of mind, and to his psyche were profound and part of a life altering trajectory. Officer Garrett did not notify Officer Mason of an imminent threat, for which he received a complaint.

42. The Waco Police Department uses "premises", which is a statement made by an officer

to issue a red flag on either a person or dwelling. The purpose is to give officers, who by the nature of their job risk their lives daily, clear and obvious foreknowledge regarding persons who pose a threat or dwellings to be approached with extreme vigilance.

43. No "premise" was placed on Bridgewater as a result of a deadly threat.

44. Plaintiff had to write his own premise for inclusion into the system. Plaintiff did so on October 11, 2018. The omission of those in command to ignore this fundamental safety precaution borders on criminal activity. This particular omission, and the acts and omissions hereinbefore noted, exhibit a reckless disregard for Plaintiff's well being and safety, and violates his natural rights, and his statutory rights under this § 1983 claim, and his rights protected by the United States Constitution and the Texas Constitution.

45. Plaintiff was the subject of significant animus in the Waco Police Department. There appears to have been enough attention focused on his leisure time as a dogged police investigator would spend on apprehending a dangerous criminal. Albeit, a good officer will always find another who offers support. Plaintiff's Exhibit "C" reflects both sides of the coin. It is a letter from Officer Stephen Rutherford memorializing a conversation with Officer Garen Bynum. Said Exhibit "C" is incorporated by reference herein as though fully set out at length.

46. On October 28, 2018, Plaintiff volunteered to respond to a domestic violence call at 3212 Wenz Avenue.

47. Plaintiff waited patiently 2 blocks away from the call awaiting backup in accordance with policy. Two separate officers were dispatched to back Plaintiff up. The first was preempted by Dispatch and the second officer arrived at 10:32 approximately 31 minutes after the call was initiated.

48. Plaintiff had been advised by one or more officers in the recent past to be careful,

because he might not be backed up. The call was described as domestic violence with an assault.

49. The failure to receive back up, when placed atop the other issues Plaintiff had been encountering, made Plaintiff reassess his safety. Over time, Plaintiff felt deflated and demoralized. The downward spiral at the Department for his career was nearing.

50. Plaintiff tendered his resignation with deep regret, but in consideration of his wife and for his own safety and security. Plaintiff had experienced an intolerable workplace, that once was his second home. He had feelings of abandonment, and could not press forward in the environment of the Waco Police Department. Plaintiff resigned on February 28, 2018, having the feeling that he had been dismissed well before he physically left the building.

## VII. Cause of Action
### Count 1: Civil Rights Claim (42 U.S.C. §1983)
### Violation of First Amendment Rights
### Against the City of Waco and Ryan Holt, Former Waco Chief of Police

51. Plaintiff, by reference, incorporates and realleges all of the preceding paragraphs as though fully stated herein.

52. Plaintiff engaged in constitutionally protected acts of creating videos and broadcasting on matters of grave public interest, inclusive of expressing his political views. Plaintiff, by Grace, intends to continue doing so in the future.

53. Defendants retaliated against Plaintiff for engaging in constitutionally protected speech, and for the content and viewpoint of Plaintiff's expressions. These actions were not justifiable by a compelling, or even substantial government interest justifying the infringement of Plaintiff's First Amendment rights. In fact, the Department's actions were harassing and unlawful.

54. The Defendants had no compelling governmental interest in interfering into Plaintiff's private activities that did not implicate Plaintiff's ability to perform his job. Plaintiff did not need or desire corrective action or remediation but, had he erred, Defendant's actions should have

been narrowly tailored to serve that government interest in a lawful way. Defendants' actions were cruel, inhumane and calculated to harass Plaintiff out of the Department. Worse, Plaintiff's very life was imperiled as a result of the insensitive, mean spirited and callous treatment of a brother officer.

55. Defendants' treatment of Plaintiff was designed to chill, if not freeze, Plaintiff's rights to engage in the broadcast of matters of public interest and importance.

56. Defendants' acted with reckless and callous indifference to the federally protected rights of Plaintiff.

57. It was the City and Police Department's custom and policy, and gross negligence in failing to train and supervise Waco Police Officers, the extent and level of retaliation, which reaching the top of the organization, which created insurmountable problems. The level, length and height of the indignities visited upon Plaintiff reflect the deliberate indifference of Defendants to the rights of Plaintiff.

58. The length of Plaintiff's sufferance of Defendants' humiliations reflects deliberate indifference to the need for more training and supervision.

59. As a direct and proximate result of the acts and omissions of Defendants set forth above, Plaintiff was deprived of his First Amendment rights of free speech, freedom of the press and freedom to petition the government for a redress of grievances.

60. As a future and even more significant result of Defendants' errors and omissions, Plaintiff has been deprived of his livelihood due to the insufferable treatment he was made to endure.

## VIII.
## Count 2: Civil Rights Claim (42 U.S.C. §1983)
### Right to Be Secure in Your Person, Papers and Effects, Unlawful Search
### Violation of Fourth and Fourteenth
### Amendment Rights Against
### the City of Waco and Chief Ryan Holt

61. Plaintiff incorporates by reference and realleges all of the preceding paragraphs as though fully set out herein.

62. At all times pertinent, Defendant Holt was either Acting Chief or Chief of the Waco Police Department and acting under color of law.

63. At all relevant times herein Plaintiff had the right to be secure in his videos and broadcasts and the content thereof, inclusive of papers.

64. At all relevant times herein Plaintiff had the reasonable expectation of privacy in his personal affairs.

65. At all times relevant to this litigation Plaintiff had the right to rely on supervisory personnel, particularly the Chief of Police, to abide by all internal rules and regulations, and to insist on the fair dispensation of justice.

66. Chief Holt played an active role in the violation of policy by allowing the targeting of an exemplary officer based on unlawful reasons, or at a minimum based on opinion, conjecture and a presumption of wrongdoing without evident proof.

67. Chief Holt failed to give leadership, guidance and training to his officers on civility and respectful treatment of personnel which fostered a competitive environment, as opposed to a cooperative entity.

68. Defendant Holt allowed and encouraged an environment of distrust, which allowed allegations without proof to disrupt the career of a competent, dedicated officer to be derailed based on innuendo and mere suspicion.

69. The written and unwritten policies of the City of Waco are the motivating forces behind the deprivation of Plaintiff's constitutional rights.

70. Said policies were applied unequally depriving Plaintiff of the equal protection he deserved.

## IX.
### Count 3: Civil Rights Claim (42 U.S.C. §1983
### Failure to Supervise and Discipline
### Violation of Fourth and Fourteenth Amendment
### Rights Against
### the City of Waco and Chief Ryan Holt in his Individual Capacity

71. Plaintiff incorporates by reference and realleges all of the preceding paragraphs as though fully stated herein.

72. The City of Waco and Chief Ryan Holt are directly responsible for supervising police officers with respect to their conduct, decorum, demeanor, attitude towards fellow officers and towards the citizens.

73. The Police Chief was not only aware of those in his chain of command who were targeting Plaintiff, he was taking action based upon the whims and mere suspicious of those he was charged with supervising.

74. The Chief himself helped to foster an environment of mistrust by allowing inuendo and rumor to run rampant in the Department, which resulted in the derivation of Plaintiff's rights.

75. The City of Waco is ultimately responsible for failing its obligation of oversight of the Department.

76. As a direct and proximate result of Defendants' acts and omissions as stated above, Plaintiff was deprived of his invaluable Fourth and Fourteenth Amendment rights and suffered injuries and damages.

## X.
## Count 4: Civil Rights Claim (42 U.S.C. §1983)
## Breach of Contract/Constructive Termination
## Violation of Fourth and Fourteenth
## Amendment Rights Against
## the City of Waco and Chief Ryan Holt

77. Plaintiff incorporates by reference and realleges all of the preceding paragraphs as though fully set out herein.

78. The City of Waco and Chief Holt are directly responsible for the management and day to day operations of the Police Department.

79. Chief Holt had direct supervisory and policy making responsibilities for the officers under his command and is the person who had the ability to establish and engender esprit de corps in his officers.

80. As a matter of public policy, Plaintiff's "resignation" was by no means voluntary or an abdication of his responsibilities; it was an extraction from intolerable work conditions, which should not be distorted to blame Plaintiff for his absence. To thine own self be true is a maxim as true today as in years past.

81. Plaintiff was forced to take his leave for peace, privacy and life itself. If one's job imperils their life because you can't trust your brethren to have your back or warn you about threats and perilous circumstances, how long would you work in such a place. Exhibit "D" is attached to this petition and incorporated by reference herein as though fully set out at length.

82. The treatment Plaintiff was exposed to amounts to retaliation. Retaliation can only breathe if condoned by those in authority. Where do you go if you can't go to the boss, or if the boss is complaining of you?

## XI.  Damages

83. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

84. In whole or in part, as a result of some or all of the above actions or omissions of Defendants, Plaintiff has and will continue to suffer irreparable harm as a result of these violations. As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and will continue to suffer severe pain of mind, emotional distress, physical manifestations of emotional distress, humiliation, loss of enjoyment of life, and is divorced from his beloved profession as a police officer.

## XII. Statutory Damages

85. Plaintiff is entitled to compensatory damages and punitive damages pursuant to 42 U.S.C. §1988.

86. As a direct and proximate result of Defendants' acts and omissions in the foregoing respects, Plaintiff has been required to retain the services of legal counsel and to incur attorney's fees and costs thereby.

87. Plaintiff brings this lawsuit pursuant to 42 U.S.C. §1983. Plaintiff is entitled to an award of reasonable attorney's fees. See 42 U.S.C. §1988.

## XIII. Jury Trial Demand

88. Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

## XIV. Prayer

89. WHEREFORE, Plaintiff requests this Court and the finder of fact to enter a Judgment in

Plaintiff's favor against all named Defendants on all counts and claims as indicated above, in an amount consistent with the proof made at trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts, where applicable, and hereby requests that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount Plaintiff is deemed to be entitled, and all other relief arising out of law, equity, and fact, also including, but not limited to:

a) Compensatory damages in an amount to be determined as fair and just under the circumstance, by the trier of fact including, but not limited to pain and suffering, loss of earnings and earning capacity, mental anguish, anxiety, humiliation, and embarrassment, and violations of Plaintiff's Federal and State rights; loss of social pleasure and enjoyment, and other damages to be proved;

b) Statutory compensatory damages and punitive damages pursuant to 42 U.S.C.§ 1988;

c) Statutory attorney's fees and costs pursuant to 42 U.S.C.§ 1988;

d) Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

e) Reasonable attorney fees, pre-judgment and post-judgment interest, and costs, and

f) Other declaratory, equitable, and/or permanent injunctive relief, as appears to be reasonable and just.

Respectfully submitted,

*Michael B Roberts*

Michael B. Roberts
Attorney for Petitioner
P.O. Box 5237
Waco, Texas 76708-0237
Tel: (254) 752-8009
Fax: (254) 752-7808
State Bar No. 17014300
Email: mbrlawoffice@aol.com